IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLTON EARLE JENNINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 02-195 Erie |
| | ) | |
| LES FETTERMAN, OFFICER, | ) | |
| in his individual capacity | ) | |
| | ) | |
| Defendant. | ) | |
| v. | ) | Civ. No. 02-196 Erie |
| | ) | |
| TERRY DAWLEY, OFFICER | ) | |
| | ) | |
| Defendant. | ) | |
| v. | ) | Civ. No. 02-210 Erie |
| | ) | |
| ERIE COUNTY DISTRICT | ) | |
| ATTORNEYS OFFICE, | ) | |
| D.A. BRAD FOULK, and | ) | |
| EX-EPD, CHIEF PAUL DEDIONISIO, | ) | |
| | ) | |
| Defendants. | ) | |

**Opinion and Order**

The above-entitled actions were referred to United States Magistrate Judge Susan Paradise Baxter in accordance with the Magistrates Act, 28 U.S.C. §§ 636 (b)(1), Rules 72.1.3 and 72.1.4 of the Local Rules for Magistrate Judges. The matters have been referred back to this Court for further proceedings and we previously Ordered that actions to be consolidated for trial. A Pretrial Conference in these actions is set for November 30, 2005 at 2:30 p.m. Our review of Defendants' motions in limine, Plaintiff's motions to compel discovery, and the parties' pretrial statements show that this action should be dismissed.

**I. Background**

Plaintiff's claims arise from the events following a traffic stop of Plaintiff's vehicle on the evening of July 7, 2000. On July 7, 2000, Plaintiff's vehicle was stopped by Patrolmen Donald Knepper because his taillights were not working. Patrolmen Jay White arrived on the scene separately to back up Knepper. A plastic bag was observed on the floor of the vehicle that appeared to contain marijuana. Plaintiff provided a false identification to White, however when White conducted a computer check the false identification provided by Plaintiff revealed that the person had a suspended driver's license. Plaintiff was asked to exit the vehicle. Plaintiff fled the scene upon exiting the vehicle and White took off in pursuit. When White caught up to Plaintiff, Plaintiff punched White, stole his police revolver, and shot White in the leg. Thereafter, several Erie Police Officers were engaged in a search for Plaintiff lasting approximately three hours.

Defendant Police Officer Terry Dawley's shift had ended at 1:30 a.m. on July 7, 2000. After his shift, he ate dinner and drank two 12 ounce beers. He went to bed around 3:30 a.m. Officer Dawley received one telephone call from a police clerk after he went to bed informing him of the events thus far that night. After receiving that call, Officer Dawley immediately called the officer in charge to discover more information and to offer assistance. The officer in charge said they did not need any help at the time.

Defendant Police Officer Les Fetterman was involved in the search. Officer Fetterman was performing the search with his police dog. Sometime after 4:00 a.m., Officer Fetterman telephoned Officer Dawley at his home. Officers Dawley and Fetterman discussed the situation and eventually Officer Dawley asked if his assistance was needed. Officer Fetterman

told Officer Dawley that his dog and another dog involved in the search were exhausted and that they could use Officer Dawley and his dog's help. Officer Dawley hung up with Officer Fetterman, called the officer in charge, relayed the conversation he had with Officer Fetterman, and asked permission to assist in the search. The officer in charge granted him permission.

Eventually, Officer Dawley and Police Officer Paul McMahon found Plaintiff. After failing to obey Officer Dawley's orders to get down, Officer Dawley observed Plaintiff dropping his hands to his waist and pulling out a revolver with his right hand. Officer Dawley fired at Plaintiff, a split-second later Officer McMahon tackled Plaintiff, and Plaintiff fired his revolver. A gun battle ensued. Plaintiff received five gun shot wounds from Officer Dawley. Plaintiff shot one of Officer McMahon's finger's off and shot Officer Dawley five times.

Plaintiff was arrested and following a jury trial he was convicted of criminal attempt (homicide), 18 Pa.C.S.A. § 901, against Officer Dawley; aggravated assault, 18 Pa.C.S.A. § 2702, against Officers White and Dawley; recklessly endangering another person, 18 Pa.C.S.A. § 2705, against Officer Fetterman; theft by unlawful attacking or disposition, 18 Pa.C.S.A. § 3921, for taking Officer White's revolver; possessing an instrument of crime, 18 Pa.C.S.A. § 907; carrying a firearm without a license, 18 Pa.C.S.A. § 6106; escape, 18 Pa.C.S.A. § 5121; resisting arrest or other law enforcement, 18 Pa.C.S.A. § 5104, driving while operating privilege is suspended or revoked, 75 Pa.C.S.A. § 1543; and violating vehicle requirements, 75 Pa.C.S.A. § 4303. He was sentenced on May 4, 2001, to a total of thirty-four and one-half years to seventy-one years' imprisonment. His judgment of sentence was affirmed by the Pennsylvania Superior Court in a memorandum opinion dated March 17,

2003.  Commonwealth v. Jennings, Docket No. 01407WDA01 (Pa.Super. 2003), *rehearing denied*, May 15, 2003 (attached as Ex. A to Defendant's Appendix (Doc. 31 of Civ No. 02-195 Erie).   No further appeals were taken and thus Plaintiff's judgment of conviction is final.

**II.  Plaintiff's Claims**

Plaintiff originally filed five separate civil actions arising out of the events of July 7, 2000, against twenty-three defendants.  In three of these actions Plaintiff's mother was also a Plaintiff.  After disposition of numerous pre-trial motions we are left with three civil actions consolidated into one action by Plaintiff asserting claims against six defendants.

Plaintiff's remaining claims are as follows.  Plaintiff claims that Officer Fetterman violated his civil rights by calling Officer Dawley to return to duty even though Officer Fetterman knew Officer Dawley was intoxicated.  Plaintiff also claims that Officer Dawley violated his civil rights by using excessive force, *i.e.*, Officer Dawley's shooting at Plaintiff while under the influence of alcohol.

Next, Plaintiff claims that the Erie Police Department and Ex-Erie Police Chief Paul DeDionisio violated his constitutional rights by being deliberately indifferent to a serious medical need when, after he was shot, he was not given medical treatment for two hours.

Plaintiff also claims that the Erie County District Attorney's Office violated his Fourth Amendment rights by causing a surgical intrusion on his body to recover a bullet without his consent and without prior notification to his attorney.

Finally, Plaintiff claims that District Attorney Brad Foulk directed the Erie Police Department to refrain from conducting a critical internal review of the events of July 7, 2000.  Plaintiff specifically claims that Foulk told Fraternal Order of Police President Christopher

Lynch and Chief DeDionisio not to conduct the internal review because it would reveal information beneficial to Jennings' criminal defense. Additionally, Foulk was aware that the FOP had filed a grievance against the Erie Police Department for not conducting a review of the events of July 7, 2000.

The parties have submitted pre-trial statements in which all Defendants submit that the claims asserted against them cannot be sustained as a matter of law. In addition, Defendants complain that Plaintiff's pre-trial statements reveal that he intends to relitigate each and every argument he made at his criminal trial, and to present evidence regarding claims dismissed in this Court.

Plaintiff's pre-trial statements do indeed set forth the entire history of his criminal case and his civil case as seen through his eyes. However, at trial Plaintiff can only pursue his surviving claims and only present evidence relevant to such claims. He cannot present evidence in support of his dismissed claims regarding "racial profiling"; comments made by the District Attorney during pre-trial and trial proceedings; excessive force by Officer Fetterman; deliberate indifference to serious medical needs by Officer Fetterman; violation of civil rights based on collecting Plaintiff's blood; as well as all other dismissed claims.

Our review of Defendants' pre-trial statements reveal that there is merit to their argument that Plaintiff will be unable to prevail as a matter of law should this case proceed to trial. Therefore, we will consider Defendants arguments for dismissal of all claims as a motion for reconsideration of our previous Orders.

**III. Discussion**

We agree with Defendants that Plaintiff's claims that Officer Fetterman violated his civil rights by calling Officer Dawley to return to duty even though he knew Officer Dawley was intoxicated, and that Officer Dawley violated his civil rights by using excessive force while under the influence of alcohol must be dismissed as a matter of law.

In affirming Plaintiff's judgment of conviction, the Pennsylvania Superior Court explained in relevant part with regard to shooting Officer Dawley as follows:

> Criminal attempt (homicide) is defined as a substantial step toward causing the death of another human being, with the intent to cause the other human being's death. 18 Pa.C.S.A. § 901(a), id. § 2501(a); see also Commonwealth v. Hobson, 604 A.2d 717, 719 (Pa.Super. 1992) (quotation omitted). The record reveals that Jennings took a substantial step toward causing Officer Dawley's death and that Jennings intended to cause Officer Dawley's death. Officer Dawley testified that, after commanding Jennings to get on the ground at least three times during the attempted arrest of Jennings, he witnessed Jennings lower his hands and pull out a handgun. N.T. Trial, 3/22/01, at 217. As Officer Paul McMahon was attempting to restrain Jennings, Jennings shot at Officer Dawley, striking him in the left hand. Id. at 218-20. Moreover, after Officer McMahon and Jennings fell to the ground, Jennings fired several more shots at Officer Dawley, striking him in the back of his knee and in the right thigh. Id. at 221-23.

Jennings, Docket No. 01407WDA01, at 5-6.

The trial judge instructed the jury as to the charge of criminal attempt as follows:

> . . . The defendant is charged with three counts of criminal attempt at homicide, specifically, murder. In order to find the defendant guilty of attempted murder, you must be satisfied that the Commonwealth has proven the following elements beyond a reasonable doubt: First, that the defendant did a certain act, and in this case it's alleged by the Commonwealth that the act or acts was the shooting of officers White, McMahon and Dawley -- and each one of those is a separate count; second, that the defendant did the act, the shooting, with the specific intent to kill that person; and, third, that the act constituted a substantial step toward the commission of that crime.

107.) The Trial judge continued by instructing the jury as to the element of intent:

> Now, a person has the specific intent to kill if he has formed intent to kill and is conscious of his own intention. The specific intent to kill needed or murder does not require planning or previous thought or any particular length of time. It can occur

6

> quickly.  All that is necessary is that there be time enough so that the defendant can and does fully form an intent to kill and is conscious of that intention.  If you find that the Commonwealth has proven those elements beyond a reasonable doubt, you should find the defendant guilty of attempted murder.  Otherwise, you must find him not guilty.

(Id. at 107-108.)  The trial judge also instructed the jury as to the elements of aggravated assault against officers Dawley, McMahon, and White. (Id. at 108.)   The trial judge then instructed the jury as to Jennings' defenses to these charges:

> Now, as to the confrontation between the defendant and officers Dawley and McMahon, the defendant or the defense claims that this incident, this shooting, occurred in self-defense.  Now, self-defense, if justifiable, is a complete defense to the charges of attempted murder or aggravated assault concerning officers Dawley and McMahon.  The Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in justifiable self-defense.
> The basic rule for self-defense is that a defendant is justified in using force against another person if he reasonably believes he is in immediate danger of unlawful force from that person and reasonably believes it is necessary then and there to use the force which he does to protect himself. Now, there are other requirements for justifiable self-defense besides the basic rule.  The additional requirements are more restrictive if a defendant uses deadly force which, under the circumstances in which it is used, is readily capable of causing death or serious bodily injury.

(Id. at 114-115).  The trial judge then specifically instructed the jury as to the "additional requirements" as follows:

> Now, when a defendant employs deadly force to protect himself, his force must meet the following requirements as well as the basic rule.  The defendant must reasonably believe he is in immediate danger of death or serious bodily injury from the other person and reasonably believe it is necessary then dn there to use deadly force upon that person to protect himself.  Now, the defendant must have been free from fault in provoking the difficulty which led to his use of deadly force.  A defendant is at fault in provoking a difficulty if he is the initial aggressor.

(Id. at 115.)  The trial judge concluded this part of his instructions as follows:

> Because the Commonwealth has the burden of disproving the defendant's claim of self-defense, you cannot find that defendant guilty of the crimes I have enumerated unless you are satisfied beyond a reasonable doubt that the defendant did not act in justifiable self-defense.  In other words, you cannot find the defendant guilty unless you are satisfied beyond a reasonable doubt that at least one of the requirements essential to the defense is lacking.

7

(Id..)  In response to jury questions submitted to the Court during deliberations, the trial judge repeated his instructions as to the elements of criminal attempt at criminal homicide.  (Id. at 129-130.)

Officer Dawley argues that the claim against him must be dismissed as it constitutes an impermissible civil collateral attack upon a criminal conviction as it challenges the validity of a conviction.  Heck v. Humphrey, 512 U.S. 477 (1994).  In addition, Officers Dawley and Fetterman argue that the claims against them regarding officer Dawley's alleged intoxication must be dismissed because the undisputed facts at trial show that Dawley's alcohol consumption did not cause him to use improper, excessive force against Plaintiff.   We agree.

In Heck v. Humphrey, the Supreme Court of the United States concluded,

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, 114 S. Ct. at 2372 (1994) (footnote and citations omitted).  In addition, the Supreme Court stated that if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.

Plaintiff presented to the jury his defense that he was justified in shooting Officer Dawley because Officer Dawley was intoxicated and/or used excessive force.  (See Transcript of Trial, March 22, 2001, at 234-238 & 238-245 (cross-examination of Dawley); 110-117 (cross-examination of Fetterman).)  Officer Dawley offered unrebutted testimony that he had

8

consumed two 12 ounce beers with his dinner over the course of two hours after his shift ended, with the last beer being consumed no later than 3:30 a.m. (Transcript, March 22, 2001, at 203-204) He also offered unrebutted testimony that he was not under the influence of alcohol when he left his house. (Id. at 204; 238 (on cross-examination).) Officer Fetterman offered unrebutted testimony on direct examination that when Officer Dawley arrived on the scene he seemed to be awake and alert. (Id. at 92.) Officer Fetterman was not asked about his knowledge of Officer Dawley's alcohol consumption by Plaintiff's counsel. It was also undisputed that medical records from Saint Vincent's hospital show that Officer Dawley's blood alcohol content level after the incident was .04. (Id. at 236.)

Plaintiff was convicted of criminal attempt at homicide, otherwise known as attempted murder. Thus, the jury found beyond a reasonable doubt that Plaintiff shot Officer Dawley with the specific intent to kill Officer Dawley and that his act of shooting Officer Dawley was a substantial step toward the commission of the crime. The jury necessarily rejected Plaintiff's defense that he acted in justifiable self-defense. To reach this result the jury had to have been satisfied beyond a reasonable doubt that at least one of the requirements essential to the defense of justifiable self-defense was lacking.

Based on the above facts and jury instructions on the law we conclude that there is no logical possibility that the jury could have found Plaintiff guilty of attempted murder if they entertained a reasonable doubt that Plaintiff was the initial aggressor and that he was free from fault in provoking the incident. A judgment in favor of Plaintiff that Officer Dawley used excessive force while under the influence of alcohol would necessarily imply the invalidity of his conviction or sentence, since such a conclusion would mean that Officer Dawley was (1)

9

under the influence of alcohol that (2) caused Officer Dawley to unjustifiably shoot Plaintiff. That scenario was rejected by the jury. Accordingly, we will dismiss Plaintiff's claims asserted against Officers Fetterman and Dawley as a prohibited collateral attack upon his criminal conviction under Heck v. Humphrey. In addition, we dismiss Plaintiff's claims regarding his assertion that Officer Dawley was under the influence of alcohol on the alternative ground that there is no genuine issue of material fact that the record evidence demonstrates that Officer Dawley was not under the influence of alcohol.

We will also dismiss as a matter of law Plaintiff's claim that the Erie Police Department and Chief DeDionisio violated his constitutional rights by being deliberately indifferent to a serious medical need when, after he was shot, he was not given medical treatment for two hours. We have already dismissed the same claim as asserted against Officer Fetterman. (See Report and Recommendation, Doc. 40 at Civ. No. 02-195 Erie, at 11-13.) As stated in the Report and Recommendation, "Defendants have produced documentary evidence to support their position that Plaintiff was medically treated." (Id. at 13.) We concluded as a matter of law that Officer Fetterman's actions were not deliberately indifferent towards Plaintiff." (Id.) The same evidence supports dismissal of the deliberate indifference claims asserted against the Erie Police Department and Chief DeDionisio. In addition, we also dismiss Plaintiff's claim asserted against the Erie Police Department as it is not a "person" subject to suit under § 1983.

Next we examine Plaintiff's claim that Defendant Foulk violated his rights by directing the Erie Police Department to refrain from conducting a critical internal review of the events of July 7, 2000, because it would reveal information beneficial to Jennings'

10

criminal defense. Plaintiff claims that Foulk told FOP President Christopher Lynch and Chief DeDionisio not to conduct the internal review because it would reveal information beneficial to Jennings' criminal defense. The record evidence establishes that there is no genuine issue of material fact on this issue.

After his conviction Plaintiff filed a motion to discharge arguing that his charges should be dismissed because the Commonwealth violated the Pennsylvania Rules of Criminal Procedure by requesting that the FOP hold off on a grievance asking for a review of the incident leading to Jennings' arrest. The trial court held a hearing on the motion and rejected Plaintiff's claim. On appeal the Pennsylvania Superior Court addressed this issue as follows:

> In the instant case, Christopher Lynch, President of the City of Erie Post Memorial Lodge Number 7 FOP testified at the motion to discharge hearing that **the purpose of the grievance was to determine whether the Erie Police had appropriate help in capturing Jennings**, N.T. Motion to Discharge Hearing, 7/3/01, at 33-34, **not whether there was police misconduct in capturing Jennings**, id. at 37. We fail to see how evidence of a grievance calling for the investigation into whether the Erie Police had appropriate help in capturing Jennings creates a reasonable probability that the result of Jennings' trial would have been different had such "evidence" been disclosed.

Jennings, Docket No. 01407WDA01, at 15-16 (emphasis added). Both Defendant Foulk and the FOP President testified at the discharge hearing, and both offered consistent testimony that Foulk never intended to stifle an investigation and that Foulk was not referring to police misconduct. (See, e.g., Motion to Discharge Hearing, July 3, 2001, 16, 25, 37, 40, 44.) In addition, FOP President Lynch repeatedly testified that the grievance, and any internal investigation, had nothing to do with any police misconduct issues. (Id. at 37-38, 40, 43-44.) In light of these undisputed facts we conclude that Plaintiff cannot state a claim against Defendant Foulk.

Finally, we also dismiss Plaintiff's claim that his Fourth Amendment rights were violated by Defendants causing a surgical intrusion on his body to recover a bullet without his consent and without prior notification to his attorney. The record evidence demonstrates that because Plaintiff was experiencing pain he sought a court order requiring the Erie County Prison to permit outside doctors to examine him and remove the bullets if medically necessary. The record evidence also shows that the decision to remove the bullet from Plaintiff was made by medical personnel for medical reasons. Thus, there is no genuine issue of material fact that no Defendant had any involvement in the surgical intrusion into Plaintiff's body to remove a bullet from his body and to leave another bullet in his body. Under these facts, there can be no Fourth Amendment violation and Plaintiff's claim must be dismissed.

## IV. Conclusion

We conclude as a matter of law that Plaintiff has no viable cause of action against any of the remaining Defendants. Accordingly, we will dismiss Plaintiff's claims and dismiss this action.

The following Order is therefore entered.

AND NOW, to-wit, this 29th day of November, 2005, for the reasons in Opinion accompanying this Order, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's claims asserted against the Defendants are dismissed as a matter of law. Judgment is entered in favor of Defendants and against Plaintiff.

IT IS FURTHER ORDERED that Plaintiff's Motions to Compel Previous Requested Discovery Exhibits Prior to November 30, 2005 Pre-Trial Hearing, and Defendants' Motions in Limine are hereby denied as moot.

The Pretrial Conference set for November 30, 2005 at 2:30 p.m. is hereby cancelled.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:   Charlton Earle Jennings, pro se
      ES-9735
      SCI Somerset
      1600 Walters Mill Road
      Somerset, PA 15510-0002

      David Jonathan Long, Esq.
      626 State Street
      Erie, PA 16501

      Gerald J. Villella, Esq. (by electronic mail)

      Matthew J. McLaughlin, Esq. (by electronic mail)

13